The next case today is Alicia Lowe et al. v. Janet T. Mills et al. Appeal number 22-1710. Attorney Staver, please introduce yourself for the record and proceed with your argument. Good morning. I'm Matt Staver for the appellants, and I'd like to reserve two minutes for rebuttal. You may. Thank you. May it please the court. On behalf of the appellants, I respectfully request that this court reverse the order below because the complaint states a plausible cause of action. This court is well familiar with this case with the P.I. that came before the court. Briefly, on August 12, 2021, Governor Mills announced the vaccine mandate that ordered all employees at certain designated health care facilities receive the COVID vaccines. Noncompliant employers would face fines and loss of licensure. On September 1, the Maine CDC made clear that the exemptions could be granted only for medical reasons, and that rule became permanent on November 10. The private defendants in this case understand clearly that the mandate means they can no longer grant any religious exemptions to any of these COVID vaccines or any other vaccines listed. The sincerity of the plaintiff's religious beliefs and the fact that there is- Mr. Staver, thank you. We are quite familiar with the facts of the case. As I understood the case, the only aspect of the vaccine mandate that you are challenging is the COVID vaccine mandate, and you're not challenging any of the other vaccines that the state wants health care workers to have. That's correct. Okay, so your argument is based on the notion of comparability and discrimination against those who have a religious-based opposition to getting the COVID vaccine. The comparability claim turns on the fact that Maine allows a medical exemption, which, at least as written in Maine, is pretty much unfettered as long as a doctor or even a physician's assistant says that this employee is entitled to a medical exemption, they get exempt. Your case is built on whether that medical exemption also undercuts the articulated interests that the state has put forth in this case. You're saying it is plausible if facts get developed that you will find that the facts do not support the notion that Maine's interests are better served in the vaccine COVID mandate situation. Have I basically got that right? Yes, exactly right, Your Honor. Okay, so this then raises the kind of complicated question of the interaction between the facts and the standard of review, which we are required under Supreme Court precedent to apply. Okay, so if we were to find that the dismissal on 12B6 were wrong, what do you contemplate happening next? What sort of discovery would there be? What sort of questions would you be asking? Your Honor, what we would do is go back and take discovery with regards to something that you had mentioned, unfettered. I don't know if you meant it in that way, but I think it is unfettered in that it is a very broad medical exemption. In fact, Justice Gorsuch in the IPA said that Maine will respect even mere trepidation, emphasizing trepidation over vaccination as sufficient, but only so long as it is phrased in medical and not religious terms. Okay, now the state has responded to you and said, oh, we're saved by the federal regulation that preempts overly broad state vaccine mandates. So what is your reply to that? Right, they say that the CMS rule is more narrow, and that's true. It is more narrow, and I think that undercuts their interest, because the CMS rule says that for medical exemptions with regards to healthcare employees, only if it is medically, specifically medically recognized contraindication to that particular vaccine. So it has to be recognized to that vaccine in a contraindication, whereas Maine's is much broader. Moreover, the CMS rule, in addition to the medical, although much narrower, more tailored to the actual protecting of the person who would be the recipient of the vaccine, as opposed to Maine's, which is much broader, the CMS rule also has a religious exemption option. So Maine has no religious exemption option. Maine has a very broad medical exemption, so that it could be any person in the medical, it lists a number of different people, doctors, physician, assistant, nurses, and others, that can essentially say that you may be medically inadvisable to take one or more of these vaccines. The way that's written is that if someone has a possibility of getting a person to say it may be medically inadvisable for you to take the influenza vaccine, you might be able to opt out of the other vaccines. It's not clear. That certainly needs to be fleshed out in discovery in how broad this medical exemption is. I think if they had narrowed their medical exemption to more like what the CMS rule is, Maine may have a stronger argument. But the Maine's medical exemption really entails anything that you want to bring under the rubric of medical so long as it's not religious based. Mr. Steger, I have the argument, but let me ask you the next question. If Maine's rule were in fact narrowed to the CMS rule, would you still continue to have an objection to it? Your Honor, I think that would make the case more difficult for the plaintiffs. Nevertheless, like the CMS rule, CMS rule has indicated that you can also have a religious based exemption. Maine is an outlier not only to the CMS rule because of no religious exemption and a much broader medical exemption, but it's frankly an outlier to the rest of the states that have been dealing with this. Moreover, Maine has indicated through its CDC, and back when you wrote the original decision on the PI, there were different stats in terms of where Maine was in getting vaccination goals. It was under the 90% back then in October of 2021 when this opinion written by you was issued. Now, however, in the state's brief, the vaccination rates and goals are much more than 90%. Their goal was to receive a goal of 90%. They have far exceeded that. Mr. Steger, bear with me. When judges have questions, we can go beyond the time limits. So even if Maine were to adopt the CMS rule, you say, I take it you're saying now, well, I don't want to say that would solve all of our concerns. We need to probe a little further. Is one of your concerns that the CMS rule does not cover every possible healthcare employer? Yes, that would certainly be the case. But your plaintiffs, are they covered by the CMS rule? Yes, they are, Your Honor. Under the religious exemption provision, they are covered. So they have the option to opt out under CMS, but not under Maine's vaccine mandate. Okay. So are you, it seems to me you'd have some difficulty if all of your plaintiffs are covered by the CMS rule with asserting a claim on behalf of others out there who would not be covered by that rule. I'm sorry, Your Honor. Go ahead. I would just say that if we only are dealing with the CMS rule, which is not an issue before this court, we wouldn't be here because they would have a religious exemption option. Okay. But since we're dealing with the vaccine mandate, the vaccine mandate not only doesn't grant that, which Maine has the right to say I'm going to affirmatively grant a religious exemption or not. But what Maine has done is they have gone to the extreme to say no one can grant a religious exemption and that if an employer grants a religious-based exemption, they could lose their license and they will be fined. That is an extraordinary step by the state of Maine against its employers and its employees. So that puts these employees directly in the crosshairs. Frankly, it puts the employers to a great extent in this damned if you do, damned if you don't type of situation. Okay. Exactly, Mr. Staver. So because of that, you know, your Title VII claim has an obvious defense. The state is making us do that and we will be punished. So in order to simplify the case, are you willing just to drop that Title VII claim and just proceed with it on the basis that your real dispute is with the state? Well, let me answer that very briefly. Obviously, our real interest is with the state. The state is what caused this problem. And that's what needs to be remedied because before this happened, these employers that are before the court would otherwise have been considering religious exemptions. Now, because of this mandate, they're not even considering them, let alone granting them. They won't even consider categorically a religious exemption, so they don't even go through the Title VII process. They will for other non-vaccine-related issues. Well, I think you just stated the case for the hospitals. Well, that's true in a sense that the employers are, on the one hand, violating Title VII. And on the other hand, if they follow Title VII to even consider it, then they're violating the vaccine mandate. So that's a novel issue that has never been litigated. We wouldn't want to drop that. But the main issue, if we— Okay. I understand. Okay. Thank you. That was very helpful. Okay. Thank you. Any more questions? No. Thank you. Thank you, counsel. At this time, you can mute your audio and video. Would Attorney Pat Warden please—thank you. And please go ahead and introduce yourself on the record to begin. I will note for the record that Attorney Dume for Northern Light and Attorney Irwin for Genesis Healthcare et al. are present in the meeting and they have ceded their time to Attorney Pat Warden. Thank you. Go ahead. Good morning. Assistant Attorney General Kimberly Pat Warden for the Maine State officials. The Free Exercise Clause and the Equal Protection Clause do not require the state to provide a religious exemption to its mandatory healthcare worker vaccination laws simply because it provides a medical exemption. That depends, does it not, on whether the two exemptions are comparable, the extent to which they are similar? Does that help? Yes. In the general applicability analysis, the court should look at what are the state's asserted interests that justify the different treatment between the medical exemption and the religious exemption. Here, the state's interests are— Excuse me, wouldn't discovery help in that analysis? For example, we can't tell quantitatively what the similarity is between the two exemptions. How many people are likely to be eligible for or to claim a medical exemption as opposed to a religious exemption? How broadly or narrowly Maine is likely or not likely to interpret the state provision? There's a whole host of issues where it seems to me factual development would inform the ultimate answer. The state disagrees, Your Honor, and that's because the decision to remove both medical and philosophical exemptions was removed from the statute. That decision was made by the Maine legislature in 2019. The reasons why that occurred are already in the record before you that was addressed by the district court on the motion to dismiss. You obviously haven't been reading the Supreme Court precedent in this area, or you wouldn't have brought the motion to dismiss on. So, what does the fact that pre-pandemic the Maine legislature imposes really have to do with the comparability question? We view the Supreme Court's decision in Fulton as stating that the state cannot rely on post hoc rationalizations for why it did certain things. In fact, you are doing exactly that. Your brief asks us to assume that the Maine law has been preempted by the CMS regulations. And so you have yourself more or less admitted that there are factual issues that you want us at the motion to dismiss stage to make a ruling that the federal regs preempt the state vaccine mandate. But we're not supposed to look outside the pleadings, much less decide a significant legal issue in order to reach outside the pleadings. And even with that, your brother says that the CMS rule has some form of a religious exception and considerably narrows the medical exception. Why aren't all of those issues of fact to be developed? So, we have argued about the CMS rule in the event that the court wants to look at the comparability of risk in between individual health care workers. But, and it's only to take into account subsequent events. So, our primary argument is that our medical exemption can stand on its own. And again, our primary argument is not that the state made comparable assessments of risk in 2019 when the legislature voted to remove non-medical exemptions from the all mandatory vaccination. Tell me, does the legislative history behind that 2019 enactment show any analysis statistically of comparability, much less address to a future pandemic, which did not exist at the time? No, of course it does not. It does not address the pandemic, but it does address the state's interests. No, even pre-pandemic, does the legislative history show any comparability analysis? No, it does not examine the specific distinction between an individual health care worker that is present in a facility for medical reasons or is exempted for medical reasons versus religious reasons. But at the time, the state was concerned with protecting individuals who could not be vaccinated for medical reasons and with increasing the overall rate of vaccination. There are portions of the legislative debate and testimony provided to the legislature at pages 4 to 6 of our brief. And you can see these concerns demonstrated in the legislative debate, and that's at appendix 73, 80 to 81, 87 to 89, 93, 99 to 100, 110 to 111, and 146 to 47. If you read the concerns of the legislators during the debate on the bill that removed the religious and philosophical exemptions, you can see the stated concerns of the state. Your argument suggests that no comparability analysis is permissible as a matter of law. No. That does not survive the Supreme Court case law. No, I disagree, Judge Lynch. Our argument is based on the language in Tandon, which says that comparability must be examined based on the state's asserted interest in the different treatment of two different types of exemptions. The state's asserted interest in removing the religious and philosophical exemptions were, as I stated, and are located in those sections of the appendix already cited. And the plaintiffs here have said, look, whatever the state's interests were as to other types of vaccines, we're not asserting a religious objection to them. Our argument is based on testing of fetal tissue, and that makes this case different than the 2019 general law. And the state has not, offers no legislative findings, offers no facts, nothing in response to that argument because it chose to file a motion to dismiss rather than allow some factual development. So there is testimony and there is legislative history that discusses that there were religious objections to other vaccinations that were required. But that's not what these plaintiffs are alleging. It's a very specific objection. Yes. You just heard your opponent say that they're not challenging on religious grounds any of the vaccines covered by the 2019. Okay. Yes. Yes, I heard him say that. Yes. All right. Our argument is as stated. All right. So if we were not to agree that the case ought to be dismissed on the pleadings, what do you anticipate would happen in terms of discovery? Are you just going to rely on the CMS rule? No, if the case were remanded, I'm sure we would explore the religious beliefs of the individual plaintiffs. We've not challenged that up to this point. And I'm sure we could develop a factual record that might fully more satisfy this court. But, again, we don't view that's necessary based on the asserted interest in the statute from 2019, which was upheld by main voters in 2020. Counsel, the asserted interest in increasing the rate of vaccination, is it your argument that that's the sole interest that drove this legislation? That when we look at the legislative history, we will find that that is the exclusive interest that prompted this legislation? No. You will also see that the legislature was very concerned with protecting medically vulnerable populations, persons who cannot be vaccinated for medical reasons, and also persons against whom vaccination may be ineffective. Go ahead and answer. In the legislative debate, you will see descriptions, particularly of children who are not able to be vaccinated for medical reasons, and the legislature was concerned with protecting those individuals. I thought the legislature was also concerned with protecting populations from infections by reducing the risk of exposure to non-vaccinated persons. At the time that the legislation was proposed, there existed philosophical and religious exemptions, and the proposal was to remove those exemptions from all of the state's mandatory vaccination requirements. That includes school children, post-secondary education, healthcare workers, and daycare workers. At the time, there were vaccination rates that were below the rate needed for population level immunity. In particular, in public schools, there were certain schools where perhaps only 50% of the students were vaccinated. Your brother has said that Maine has been quite successful in urging people to be vaccinated, and it now has a rather high vaccination rate, and so it has satisfied at least one of the concerns. You may dispute that. We have before us no information on that. Would you like to respond to that argument that he made? It is true that the requirement for individuals to be vaccinated against COVID-19 was successful. Between the time of August of 2021 and November of 2021, the vaccination rate increased dramatically. Yes, and at this point, is there any information in the record as to the vaccination rate, the community transmission rate, whether some parts of the state are more vaccinated than others? Is there anything in the record at present? There is not anything in the record at present, but all of that data is available on the CDC's website. I wish the court could take judicial notice of it if it so chose. No, it's not at all clear to me we could take judicial notice of it if it's at all disputed. Okay. We've asked you a lot of questions. Is there a wrap-up argument you'd like to make? No, thank you. I'll just say that with respect to the equal protection claims and the strict scrutiny arguments, we'll rest on our briefs. Thank you. Thank you. Thank you, counsel. At this time, please mute your audio and video. And, Attorney Staver, if you could unmute your audio and video and reintroduce yourself on the record to begin, you have a two-minute rebuttal. Thank you, Matt Staver, for the appellants. Your Honors, this is here, as you well know, on a motion to dismiss. And the motion to dismiss is to determine the plausibility of the claims. And these claims are clearly plausible. And as you have clearly indicated, discovery is something that would help and is necessary, discovery not only in terms of the breadth of the medical exemption, which is quite broad, whether or not that particular exemption that you can have an opposition to one or more. If you have an opposition to influenza, can you get an objection medical exemption for COVID? The vaccine rates, they have definitely increased. And as counsel for Maine has indicated, that success is apparent and they have exceeded their 90% goal. A lot of those issues can be and should be developed in discovery. Also, the development of what was behind the 2019 law, but more particularly what was behind the 2021 vaccine mandate, its interest, its purpose, its narrow tailoring, all of those issues should be fleshed out in discovery. That's all we're asking for, not on the merits just to go back and have our opportunity in our day in court to engage in appropriate discovery. If this court has any other questions, I'll be happy to address those. But we would respectfully request that this court reverse and allow discovery to proceed in this case. Thank you. Thank you. Thank you. That concludes arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.